FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

DEC 01 2010

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| ) | CRIMINAL ACTION FILE |
| v. ) | |
| ) | Number 1:09-cr-0406-TCB-JFK |
| RUFUS PAUL HARRIS, ) | |
| BENJAMIN STANLEY and ) | |
| DARRYL HORTON, ) | |
| ) | |
| Defendants. ) | |

# ORDER

Before the Court is the Report and Recommendation of Magistrate Judge Janet F. King [114]. Defendants have filed consolidated objections to the R&R [120].

## I. Background

On November 9, 2009, the grand jury returned a superseding indictment against Defendants Rufus Paul Harris, Benjamin Stanley, and Darryl Horton, charging all three with conspiracy (count one), scheme to commit securities fraud (count two), and scheme to commit wire fraud (counts three through seven); and also charging Harris with false

certification of a financial statement (count eight) [28].[1] Defendants moved to dismiss counts one, two and eight as duplicitous and to suppress statements made during depositions taken by the Securities and Exchange Commission ("SEC") during civil litigation.[2] Horton also filed a motion for severance. After the parties had fully briefed the issues, Magistrate Judge Janet F. King held an evidentiary hearing on the motions to suppress on June 29, 2010, and thereafter permitted additional post-hearing briefs on the suppression issue. On October 22, 2010, Judge King issued a fifty-two-page R&R thoroughly examining Defendants' motions and recommending that the motions to dismiss, motions to suppress, and the motion for severance be denied.

Defendants have objected to Judge King's findings and recommendations, contending that she erred in (1) concluding that count two is not duplicitous; (2) concluding that the government properly pled 18 U.S.C. § 1350 in count eight and in finding that count to not be duplicitous;

---

[1] It appears that all Defendants have moved to dismiss count eight, even though the count only applies to Harris.

[2] Because of the exhaustive nature of Judge King's R&R, the Court will assume the reader's familiarity with that opinion and will not repeat the facts and reasoning detailed therein.

and (3) denying Defendants' motions to suppress evidence obtained in the SEC's civil investigation.[3]

## II. Analysis

### A. Standard of Review

After conducting a careful and complete review of a magistrate judge's findings and recommendations, a district judge may accept, reject or modify a magistrate judge's R&R. 28 U.S.C. § 636(b)(1)(C); *Williams v. Wainwright*, 681 F.2d 732, 732-33 (11th Cir. 1982). A district judge "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). Those portions of an R&R to which an objection is not asserted are reviewed for plain error. *United States v. Slay*, 714 F.2d 1093, 1095 (11th Cir. 1983).

### B. Whether Count Two Is Duplicitous

Defendants contend that count two is duplicitous because it does not specify whether they are being charged under subsections (1) or (2) of 18 U.S.C. § 1348, or under both, and that as a result they could be convicted of

---

[3] Although Defendants appear to reserve the right to move for severance during trial, they do not specifically object to the portion of the R&R denying their motions for severance.

violating § 1348 without the jury unanimously agreeing as to which subsection had been violated.

Count two tracks the language of § 1348, which addresses two alternative means of committing securities and commodities fraud.4 The Eleventh Circuit has found that counts drafted in this manner are not duplicitous. "A duplicitous indictment charges two or more separate and distinct crimes in a single count." *United States v. Burton*, 871 F.2d 1566, 1573 (11th Cir. 1989). But where "a penal statute . . . prescribes several alternative ways in which the statute may be violated and each is subject to the same punishment . . . the indictment may charge any or all of the acts conjunctively, in a single count, as constituting the same offense." *Id.* Thus, Judge King correctly found that the count was not duplicitous.

Further, Judge King has indicated that she intends to craft jury instructions that would explain the requirement to reach a unanimous agreement as to either one or the other subsection. Such an instruction would prevent the jury confusion that Defendants contend should be

---

4 To the extent the language of count two deviates from the statute, the deviation worked in Defendants' favor—count two was drafted using "and" instead of "or," which means that the grand jury had to consider whether there was evidence to support charges under both subsections of the statues rather than under just one.

4

avoided through dismissal. Accordingly, the Court will adopt Judge King's findings and recommendations as to count two.

### C. Whether 18 U.S.C. § 1350 Was Properly Pled and/or Duplicitous

Defendants contend that Judge King should have dismissed count eight (which is brought only against Harris) because it fails to include an essential element of the offense. Subsections (c)(1) and (c)(2) of 18 U.S.C. § 1350 both address the false certification of corporate financial statements. The subsections require the same elements of proof with one exception—subsection (c)(1) relates to certifying a statement while knowing it to be false, whereas subsection (c)(2) relates to "willfully" certifying a statement while knowing it to be false.

"[T]he Fifth Amendment is satisfied if the indictment makes a specific statutory reference to an essential element of the offense and contains some other indication from which we can infer that the grand jury found that element to be present." *United States v. Seher*, 562 F.3d 1344, 1357 (11th Cir. 2009). Count eight of the indictment does not contain the word "willfully." It does, however, specifically refer to both subsections (c)(1) and (c)(2) of 18 U.S.C. § 1350. Further, count eight of the indictment incorporates paragraphs one through five of count one, in which the grand

5

jury charges that (1) Harris filed an annual report containing gross misrepresentations about his company's assets and income that he knew to be false, (2) those misrepresentations were among the reasons that his company's stock price more than tripled, and (3) Harris, while knowing the stock price to be artificially inflated as a result of his misrepresentations in the annual report, transferred more than a million shares of stock to his family members for them to sell at the artificially inflated prices. The combination of the specific reference to 18 U.S.C. § 1350 (c)(1)-(2) and the factual findings indicative of willfulness are sufficient to put Harris on notice of the charges against him and to show that the grand jury fully considered the crime charged.

Further, the Court agrees with Judge King's finding that count eight reflects the permissible incorporation of a lesser included offense and is not duplicitous. Judge King has also indicated that she intends to provide (1) jury instructions for count eight explaining the incorporation of a lesser included offense, and (2) a jury verdict form that sets forth the necessary findings as to Harris's mental state. Such an instruction and verdict form would prevent the jury confusion and risk of double jeopardy that

Defendants fear. Accordingly, the Court will adopt Judge King's findings and recommendations as to count eight.

### D. Whether Evidence from Civil Investigation Should Be Suppressed

Defendants moved to suppress depositions taken by the SEC during the course of a civil investigation. They contend that the SEC violated their rights to due process by (1) colluding with the U.S. Attorney's Office ("USAO") to obtain Defendants' testimony without having to advise them of their Fifth Amendment rights against self-incrimination; (2) concealing from them that it was sharing information with the USAO; and (3) failing to put them on notice that they were being targeted for criminal prosecution.

The Court starts with the premise that the sharing of information between the SEC and the USAO is permissible. *See United States v. Stringer, III*, 535 F.3d 929, 933 (9th Cir. 2008) ("Federal securities laws authorize the SEC to transmit evidence it has gathered to the USAO to facilitate a criminal investigation by the USAO. *See* 15 U.S.C. §§ 77t(b), 78u(d)."); *S.E.C. v. Horowitz & Ullman, P.C.*, 1982 WL 1576, at *6 (N.D. Ga. Mar. 4, 1982) ("the court notes that there is express statutory and regulatory authority for and a history of cooperation between the SEC and the Justice Department"); *SEC v. Dresser Indus., Inc.*, 628 F.2d 1368, 1374

(D.C. Cir. 1980) (en banc) ("In the absence of substantial prejudice to the rights of the parties involved, such parallel proceedings are unobjectionable under our jurisprudence.").

Although the sharing of information between the SEC and the USAO is permitted, Courts have placed restrictions on how information may be obtained and shared. First, the SEC must pursue evidence in the good-faith pursuit of its own interests, and not merely to advance a criminal prosecution. Second, the SEC may not actively conceal the possibility of criminal proceedings. Defendants allege that the SEC acted in bad faith and concealed the possibility of criminal proceedings.

### 1. No Bad Faith Conduct

The government cannot take advantage of the more liberal civil discovery rules to obtain information solely for criminal prosecution that it otherwise would not be able to obtain in a criminal proceeding. *United States v. Stringer*, 408 F. Supp. 2d 1083, 1087-88 (D. Or. 2006). Thus, the SEC and the USAO must keep their investigations on parallel tracks and cannot merge them by, for example, having the SEC take actions or seek evidence solely for the benefit of or at the direction of the USAO. *United States v. Scrushy*, 366 F. Supp. 2d 1134, 1139 (N.D. Ala. 2005).

In other words, the SEC must undertake its investigation in the good-faith pursuit of its own interests. A "bad faith investigation [by the SEC] is one conducted solely for criminal enforcement purposes." *SEC v. Dresser Indus., Inc.*, 628 F.2d 1368, 1387 (D.C. Cir. 1980). But where "the agency has a legitimate noncriminal purpose for the investigation, it acts in good faith . . . even if it might use the information gained in the investigation for criminal enforcement purposes as well." *Id.* (citing *United States v. LaSalle Nat'l Bank*, 437 U.S. 298 (1978), for the definition of a good faith investigation); *Horowitz & Ullman*, 1982 WL 1576, at 5 (where regulatory agency continues to pursue its own investigation, "its investigation is in good faith even if some of its information is used for criminal enforcement purposes as well, so long as there is no other indicia of bad faith"); *United States v. Handley*, 763 F.2d 1401, 1405 (11th Cir. 1985) (civil proceeding was not filed solely to develop evidence to support a criminal prosecution, and any misconduct in taking civil depositions could not be attributed to the government).

Defendants contend that the SEC operated in bad faith when obtaining their deposition testimony. Defendants further contend that Judge King's finding to the contrary was based on the application of

9

erroneous facts because she failed to consider evidence that (1) the lead SEC attorney, Alana Black, had substantive discussions with USAO prosecutors before she deposed the Defendants; and (2) Black had reason to know that the USAO was likely to prosecute the matter before she deposed Stanley and Harris. Even if the Court were to agree with Defendants, the outcome would be the same.

Assuming that Black knew that the USAO intended to prosecute Defendants, there no evidence that she did anything other than pursue evidence to support the SEC's civil litigation. Further, Defendants' reliance on *Scrushy* as establishing a merger of investigations is misplaced; a comparison to that case merely supports the finding in this case that the SEC did not merge the civil investigation with the criminal investigation. In *Scrushy*, the SEC attorney who deposed the defendants testified that

> he received explicit directions from the U.S. Attorney's office concerning tailoring his examination of Mr. Scrushy. He was told areas to avoid to keep Mr. Scrushy in the dark regarding the criminal investigation, and . . . [the SEC attorney] specifically included questions in the examination that he would not have included had the U.S. Attorney's office not contacted the S.E.C. and discussed the criminal investigation. Further, the deposition was moved to Birmingham at the U.S. Attorney's request, thus changing the venue of the subsequent perjury charges from the Northern District of Georgia to the Northern District of Alabama.

366 F. Supp. 2d at 1138. Thus, the SEC attorney crossed over into the criminal investigation by "changing the venue of the deposition to accommodate the U.S. Attorney's office, extending the length of the deposition, and asking additional questions that otherwise would not have been asked after learning of the criminal investigation" *Id.*

Defendants have not presented facts that even approach those in *Scrushy*. The allegations that the SEC kept the USAO apprised of its investigation and allegedly knew that the USAO intended to prosecute defendants (a fact that the SEC disputes) simply do not meet the standard set in *Scrushy* for establishing the merger of civil and criminal investigations.

Defendants have presented no evidence that the USAO instructed Black to take some action or avoid some action to benefit the criminal case, and they offer no evidence to support their conjecture that the SEC manipulated the civil litigation proceedings solely for the benefit of the criminal proceedings. Defendants contend in a footnote on page twelve of their objections that "the questions posed and answers supplied served the interest of criminal prosecution," but they do not provide supporting examples and do not allege that such questions and answers did not also

advance the SEC's civil action and would not have otherwise been asked. Thus, Defendants have not established that the SEC obtained their testimony in bad faith.

### 2. No Concealment

The SEC cannot intentionally mislead a defendant about the possibility of a criminal investigation. See *United States v. Kordel*, 397 U.S. 1, 11-12 (1970). In the absence of intentional concealment, however, the SEC does not have an affirmative duty to advise a witness during civil litigation proceedings that he may be subject to criminal proceedings.[5] *Stringer*, 535 F.3d at 940 ("Almost every other circuit has denied suppression, even when the government agents did not disclose the possibility or existence of a criminal investigation, so long as they made no affirmative misrepresentations.") (citing cases from numerous circuits,

---

[5] SEC policy requires providing witnesses subpoenaed during an administrative investigation with a "Form 1662," entitled "Supplemental Information for Persons Requested to Supply Information Voluntarily or Directed to Supply Information Pursuant to a Commission Subpoena." Form 1662 advises individuals of, among other things, their right to an attorney and their Fifth Amendment right to refuse to provide incriminating evidence. According to Black, the provision of Form 1662 is not required during civil litigation proceedings because testimony is then obtained pursuant to the Federal Rules of Civil Procedure. Defendants contend that the SEC initiated civil litigation before deposing them to avoid having to provide them with a Form 1662. However, they have offered no evidence to support this conjecture. Further, the SEC has sufficiently explained that it initiated civil proceedings in this matter earlier than it usually would have because of the need to promptly end ongoing violations.

including *United States v. Wuagneux*, 683 F.2d 1343, 1347 (11th Cir. 1982)).

Defendants contend that because Black knew about the USAO's investigation and was sharing information with the USAO, she had a duty to warn Defendants before their depositions about any pending criminal prosecution. None of the Defendants appears to argue that he asked Black whether he could be subject to criminal prosecution and that she denied it. Instead, Defendants' position seems to be that Black concealed the criminal proceedings because she did not raise the subject herself. Defendants have offered no authority supporting such a position.

Further, as to Stanley and Horton, they were deposed with counsel present. Courts have held that individuals who provide information to the SEC are on notice that anything they produce may be used in a criminal prosecution—particularly where they are represented by counsel. *See Horowitz & Ullman*, 1982 WL 1576, at *8-9 (N.D. Ga. 1982). Harris was deposed without counsel present; however, the SEC sent him a letter containing a Form 1662 prior to his deposition. Courts have found that individuals acting without counsel are on notice that the information provided to the SEC may be used in criminal proceedings where an SEC

13

Form 1662 has been provided. *United States v. Teyibo*, 877 F. Supp. 846, 856 (S.D.N.Y. 1995). Accordingly, Defendants have not established that the Court should deviate from the general rule that evidence obtained during SEC civil proceedings may be used by the government in criminal proceedings. The Court will therefore adopt Judge King's findings and recommendations as to Defendants' motions to suppress.

### III. Conclusion

The Court ADOPTS AS ITS ORDER the R&R [114]. The Court DENIES Defendant Horton's motion for severance [75]; DENIES Defendants' motions to suppress counts one, two and eight [69, 88, 89]; and DENIES Defendants' motions to suppress civil deposition testimony [68, 74, 85].

IT IS SO ORDERED this 1st day of December, 2010.

Timothy C. Batten, Sr.
United States District Judge