**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| RUFUS PAUL HARRIS, | : | MOTION TO VACATE |
|     Movant, | : | 28 U.S.C. § 2255 |
| | : | |
|     v. | : | CRIMINAL INDICTMENT NO. |
| | : | 1:09-CR-0406-TCB-JFK-1 |
| UNITED STATES OF AMERICA, | : | |
|     Respondent. | : | CIVIL FILE NO. |
| | : | 1:15-CV-0467-TCB-JFK |

**UNITED STATES MAGISTRATE JUDGE'S
FINAL REPORT AND RECOMMENDATION**

Movant, Rufus Paul Harris, has filed a 28 U.S.C. § 2255 motion to vacate, set aside, or correct his federal sentence entered in this Court under the above criminal docket number. The matter is before the Court on the motion to vacate, as amended [356, 359], Respondent's response [363], and Movant's reply memorandum [365]. For the reasons discussed below, Movant's motion to vacate and a certificate of appealability (COA) are due to be denied.

## I.      Background

On September 15, 2009, a federal grand jury in the Northern District of Georgia indicted Movant, Benjamin Stanley, and Darryl Horton for securities fraud and conspiracy. United States v. Stanley, 739 F.3d 633, 639 (11th Cir.) cert. denied, Harris v. United States, _ U.S. _, 134 S. Ct. 2317 (2014). The defendants were charged on

"seven counts: conspiracy to commit securities fraud, in violation of 18 U.S.C. § 1349; a substantive securities fraud charge, in violation of 18 U.S.C. § 1348; and five counts of wire fraud, in violation of 18 U.S.C. § 1343." Stanley, 739 F.3d at 639.  Movant also was charged "in an eighth count with false certification of a financial statement, in violation of 18 U.S.C. § 1350(c)(1)." Stanley, 739 F.3d at 639.  After opening statement, Movant represented himself at trial but absconded before the finish of trial. Id. at 642.  The jury found Movant guilty as charged.  Id.

Movant appealed and argued "that his Sixth Amendment rights were violated both because he did not validly waive his right to counsel and because his standby counsel was not permitted to represent him after he ran" and that during sentencing "the district court impermissibly considered his lack of remorse in violation of his Fifth Amendment rights." Id. at 638.  The Eleventh Circuit Court of Appeals affirmed the judgment against Movant. Id. at 656.  Movant now raises eleven grounds for collateral relief under § 2255.  (Mot. to Vacate and Attach., ECF Nos. 356, 356-1).

## II.    28 U.S.C. § 2255 Standard

Section 2255 of Title 28 allows a district court to vacate, set aside, or correct a federal sentence that was imposed in violation of the Constitution or laws of the United States or was imposed by a court without jurisdiction, exceeds the maximum sentence

2

authorized by law, or is otherwise subject to collateral attack.  28 U.S.C. § 2255. Collateral relief, however, is limited, and "[o]nce [a] defendant's chance to appeal has been waived or exhausted, . . . we are entitled to presume he stands fairly and finally convicted" and "a collateral challenge may not do service for an appeal." United States v. Frady, 456 U.S. 152, 164-65 (1982).

"Once a matter has been decided adversely to a defendant on direct appeal it cannot be re-litigated in a collateral attack under section 2255." Rozier v. United States, 701 F.3d 681, 684 (11th Cir. 2012) (quoting United States v. Nyhuis, 211 F.3d 1340, 1343 (11th Cir. 2000)), cert. denied, _ U.S. _, 133 S. Ct. 1740 (2013).  Further, collateral review of a claim that could have been raised on direct appeal, but was not, is foreclosed unless the movant can show cause and prejudice for his default or actual innocence.  McKay v. United States, 657 F.3d 1190, 1196 (11th Cir.  2011) (citing Schlup v. Delo, 513 U.S. 298, 327 (1995)).  To credibly claim actual innocence, a petitioner must, "with new reliable evidence--whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence--that was not presented at trial[,]" demonstrate that "it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." Schlup, 513 U.S. at 324, 327.

3

Thus, § 2255 relief "is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice." Lynn v. United States, 365 F.3d 1225, 1232 (2004) (quoting Richards v. United States, 837 F.2d 965, 966 (11th Cir. 1988)) (internal quotation marks omitted); see also Massaro v. United States, 538 U.S. 500, 505-09 (2003) (holding that a constitutional claim of ineffective assistance of counsel generally is properly raised on collateral review in order to allow for adequate development and presentation of relevant facts). On collateral review, it is the movant's burden to establish his right to relief. Mackey v. United States, 221 F. App'x 907, 910 (11th Cir. 2007).

"An evidentiary hearing is not required when 'the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.'" Gordon v. United States, 518 F.3d 1291, 1301 (11th Cir. 2008) (quoting § 2255). That is the case here, as shown in the discussion below.

4

## III.   Discussion

### A.   Grounds One, Three, and Four

Movant  admits that he did not raise Grounds One, Three, and Four on direct appeal and asserts ineffective assistance of appellate counsel as the reason he did not. (Mot. to Vacate, Attach. at 29, 33, 35).

As stated above, claims that could have been raised on direct appeal, but were not, generally are foreclosed in § 2255 proceedings unless the movant can show cause and prejudice for his default or actual innocence.  McKay, 657 F.3d at 1196. "Constitutionally ineffective assistance of counsel can constitute cause[.]" Brown v. United States, 720 F.3d 1316, 1333 (11th Cir. 2013) (quoting Holladay v. Haley, 209 F.3d 1243, 1254 (11th Cir. 2000)) (internal quotation marks omitted), cert. denied, _ U.S. _, 135 S. Ct. 743 (2014).  To show constitutionally ineffective assistance of counsel, a movant must establish deficient representation by counsel and prejudice. Strickland v. Washington, 466 U.S. 668,  690-92 (1984).  Thus, to establish cause based on ineffective assistance of appellate counsel, a movant must demonstrate deficient performance by counsel and demonstrate that, if counsel had not performed deficiently, there is a reasonable probability that the appellate outcome would have been favorable to the movant.  See Ferrell v. Hall, 640 F.3d 1199, 1236 (11th Cir.

5

2011).  It is the movant's burden to establish that counsel was ineffective.  <u>Chandler</u>

<u>v. United States</u>, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc).

As discussed below, Movant fails to show that appellate counsel was ineffective

on Grounds One, Three, or Four, and Movant does not otherwise overcome his default

on those grounds.[1]  Accordingly, review is foreclosed.

### 1.   <u>Ground One – Because of Extenuating Circumstances Critical Facts Were Not Developed at Trial</u>

At trial, the Government adduced these essential facts: [Movant] founded and served as Chief Executive Officer of Conversion Solutions Holdings Corporation ("CSHC"), a Delaware company operating out of Kennesaw, Georgia. Stanley, CSHC's cofounder, served as Chief Operating Officer. The third co-defendant, Chief Financial Officer Horton, is not part of this appeal.  Viewed most charitably, CSHC's business model sought to fund small businesses that were frozen out of the mainstream credit market. CSHC traded publicly over the counter as a penny stock, and the company was required to file periodic reports with the SEC.

Despite its officers rosy representations, for a "holdings corporation," CSHC held very little. [Movant] and Stanley falsely represented that CSHC owned and maintained hundreds of millions of dollars in assets, including a "UCC Security Note" worth $310 million that CSHC had purchased for $40 million. [Movant] issued a series of press releases claiming that CSHC owned or controlled entire issuances of foreign sovereign bonds of Venezuela and Finland worth billions of dollars and paying tens of millions in annual interest. Several of these press releases named Stanley alongside [Movant] as a CSHC contact person. CSHC's

---

[1]In his reply, Movant asserts actual innocence but fails to meet the actual innocence standard under <u>Schlup</u>.

2006 10-K, filed with the SEC by [Movant], claimed assets of $800 million, counting the foreign sovereign bonds and the "UCC Security Note," along with income of nearly $20 million in interest from the bonds–CSHC's only income.     Stanley and [Movant] signed a management representation letter in which they attested to the accuracy of financial information provided to an outside auditor who prepared the financial statements attached to SEC filings. Both Stanley and [Movant] solicited individual investors and gave statements in radio interviews that confirmed ownership of the sovereign bonds and promoted the value of company stock. Investors testified that they relied on these misrepresentations when choosing to invest. All the while, CSHC had few (if any) real assets. The worthless "UCC Security Note" was not legitimate, and CSHC had not purchased it for $40 million. CSHC did not own or control the foreign bonds. The company never earned any revenue and was financed solely by $1.8 million in cash from investors, from which [Movant] and Stanley each drew more than $300,000 in salary.

The co-defendants held significant equity in CSHC. Through much of September 2006, CSHC stock traded around one dollar per share.  At the end of that month, as the misrepresentations in press releases and SEC filings took hold, the stock price tripled in forty-eight hours to over three dollars per share, and it remained artificially elevated for several weeks. With the "pump" in progress, the "dump" began. The co-defendants each transferred substantial amounts of stock to close family members who sold hundreds of thousands of shares at inflated prices.  By the time the SEC filed suit and halted trading in CSHC on October 24, 2006, nearly 6,000 investors had lost an estimated $42 million.

Stanley, 739 F.3d at 639-40.

Movant now asserts that his due process rights were violated because, due to (unexplained) extenuating circumstances and processes, critical facts were not developed at trial and because there is a reasonable likelihood that those facts would

7

have changed the outcome.  (Mot. to Vacate at 4).  Movant cites the Eleventh Circuit Court of Appeals' summary of the evidence – as quoted above – and then lists seventy-two alleged facts.  (Id. at 4-24 and Attach. at 25-29; Am. Mot. to Vacate, ECF No. 359).  Movant appears to argue that, if these facts had been developed at trial, the result would have been different.

Movant's arguments do not support an ineffective assistance of appellate counsel claim that is sufficient to show cause for his default of Ground One.  Movant does not show what extenuating circumstances existed that made him unable to present the alleged facts at trial, and he does not show that appellate counsel was ineffective for failing to raise his Ground One claim.  Had appellate counsel argued that unexplained, extenuating circumstances had prevented Movant from developing seventy-two facts at trial and then simply provided a list of seventy-two alleged facts for the appellate court, there is no reasonable probability that the appellate outcome would have been different.  See Blackshear v. Dowling, No. 08-13427, 2009 WL 297710, at *2 (11th Cir. Feb. 9, 2009) ("We may not consider new evidence furnished for the first time on appeal." (citing Smith v. United States, 343 F.2d 539, 541 (5th Cir. 1965))).

AO 72A
(Rev.8/82)

2.   **Ground Three - Suppression of Exculpatory Evidence**

The company over which Movant was Chairman, CSHC, became a publicly traded company when it took over Fronthaul in approximately July 2006 (the merger apparently was finalized on approximately September 13, 2006). (PSR ¶¶ 11, 27; Trial Tr. Vol. III at 348, 449, 491, ECF No. 254).   Deborah Oremland, a securities fraud investigator, testified at trial that she had reviewed the trading data for CSHC, including a list of prices and volumes from March 1 through September 1, 2006. (Trial Tr. Vol. III at 400, 450-51).   Movant asked Oremland, "You were asked to provide a list of prices and volumes for the defendants' request.  I think you provided from 3-1 to 9-1?" (Id.).  Oremland responded, "right."  (Id. at 451).

The February 2013 Presentence Investigation Report shows that trading records (referred to as blue sheets) were used by Oremland to calculate a loss amount of over $42 million for all customers who maintained a loss during the relevant period of approximately July 2006 through January 2007.  (PSR ¶¶ 27-32).

Movant asserts that his due process rights were violated at trial when the prosecution suppressed exculpatory evidence, the blue sheets, that it later introduced for sentencing purposes. (Mot. to Vacate, Attach. at 32).  Movant argues that the blue sheets show Fronthaul Group's pre-merger dumping on CSHC of illegally issued

9

shares and that, had the jury been aware of those activities, there is a reasonable probability that the result at trial would have been different.   (Id. at 32-33). Respondent argues that Movant had access to the blue sheet trading data during discovery and that he does not establish that the blue sheets were exculpatory even if they showed that others also engaged in insider trading.  (Resp't Resp. at 18-19, ECF No. 363).   Respondent provides a copy of a letter to Movant that supports its contention that the blue sheets were provided during discovery.  (Letter dated Sept. 22, 2011, ECF No. 363-1).  Movant replies (1) that the government ignored significant pre-merger events that occurred up to five months earlier than the late 2006 events on which he was prosecuted[2] and (2) that "only a[n] edited 'summary' [of the blue sheets] was made available for discovery" (apparently the edited summary did not include pre-merger events).  (Mov't Reply at 10, ECF No. 365).[3]

Movant's arguments do not support an ineffective assistance of appellate counsel claim that is sufficient to show cause for his default of Ground Three.  Brady

---

[2]Evidence regarding Movant's scheme focused on September and October 2006. Stanley, 739 F.3d at 640.

[3]In his reply, Movant also contests the government's statement of various facts in its response.  (Mov't Reply at 12-13).  These issues add nothing that changes the outcome.

10

governs claims of suppression of exculpatory evidence by the prosecution, and Movant does not present a viable <u>Brady</u> claim that appellate counsel reasonably should have raised.  <u>See</u> <u>Brady v. Maryland</u>, 373 U.S. 83 (1963).

Under <u>Brady</u>, "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  <u>Id.</u>, at 87.  To establish a <u>Brady</u> claim, the petitioner must "prove that:  (1) the government possessed evidence favorable to him; (2) the defendant did not possess the evidence and could not have obtained it with reasonable diligence; (3) the government suppressed the favorable evidence; and (4) the evidence was material."  <u>Davis v. Terry</u>, 465 F.3d 1249, 1254 (11th Cir. 2006).

Movant admits that he had an edited summary of the blue sheets.  Further, events at trial show that Movant was aware that trading records for CSHC existed for as early as March 1, 2006 (which would have shown, among other things, any pre-merger dumping), and that they had been provided by Oremland.  Thus, Movant fails to show that he did not possess the pre-merger trading records at trial or that he could not have obtained them with reasonable diligence.  Had appellate counsel presented

11

the argument that Movant presents to this Court, there is no reasonable probability that the appellate outcome would have been different.

### 3.      Ground Four – Selective Prosecution

Movant asserts that his due process rights were violated as a result of selective prosecution, i.e., by the government's failure to prosecute Fronthaul's illegal stock activity,[4] calculating the loss amount based on over $40 million in losses for which Fronthaul allegedly was responsible,[5] and calculating his criminal history based on two convictions for driving under the influence.  (Mot. to Vacate, Attach. at 34).

Movant's arguments do not support an ineffective assistance of appellate counsel claim that is sufficient to show cause for his default of Ground Four.  A selective prosecution claim must be raised before trial or it is considered waived, absent a showing of good cause.  Fed. R. Crim. P. 12(b)(3)(A)(iv), (c)(3); United States v. Jennings, 991 F.2d 725, 730 (11th Cir. 1993).  Further, to support a claim of selective prosecution, "a defendant must establish *first,* that he has been singled out for

---

[4]It appears that Movant asserts that the false UCC Security Note and foreign sovereign bonds actually originated with Fronthaul and that he unfairly was made responsible.  See Stanley, 739 F.3d at 639.

[5]Movant's claim that the loss amount was erroneously calculating based on over $40 million in losses fails for the reasons stated below in the discussion of Grounds Five and Six.

12

prosecution while others similarly situated have not generally been proceeded against for the type of conduct with which he has been charged, and *second,* that the decision to prosecute was invidious or in bad faith because it was based upon an impermissible factor such as race." United States v. Burton, 871 F.2d 1566, 1574 n.3 (11th Cir. 1989) (quoting United States v. Gordon, 817 F.2d 1538, 1539 (11th Cir. 1987)) (internal quotation marks omitted); see also Gary v. City of Warner Robins, Ga., 311 F.3d 1334, 1339, n.12 (11th Cir. 2002) (same).

Movant does not show that he raised selective prosecution before trial, therefore it is waived. Further, there is no indication that Movant was prosecuted based on an impermissible factor such as race, and had appellate counsel presented the argument that Movant presents to this Court, there is no reasonable probability that it would have succeeded. Further, any argument on appeal that Movant's DUI convictions should not be used in determining his criminal history would fail. See United States v. Acuna-Reyna, 677 F.3d 1282, 1284 (11th Cir. 2012) ("We agree with the alternative argument of the government that . . . the district court did not err when it assessed one criminal history point for Acuna-Reyna's misdemeanor conviction [for driving under the influence].").

13

**B.** **Ground Five – Loss Amount**
**Ground Six – Ineffective Assistance of Sentencing and Appellate**
**Counsel on the Loss Amount**

The February 2013 Presentence Investigation Report shows that trading records (referred to as blue sheets) were used to calculate a loss amount of over $42 million for all customers who maintained a loss during the relevant period. (PSR ¶¶ 27-32). The PSR recommended a twenty-two offense level increase under U.S.S.G. § 2B1.1(b)(1)(L) (2011) based on a loss of more than $20 million but less than $50 million. (Id. ¶ 36).

In its February 17, 2012, sentencing memorandum, the government stated that Movant's fraud scheme caused losses of over $42 million to over 5,000 investors but that a more conservative loss estimate was for $7 to $20 million, based on actual victim interviews or impact statements from over 250 investors. (Sentencing Mem. of Resp't at 2, ECF No. 270). The government stated that, after an extensive discussion on the matter, the parties had agreed that, among other things, the government would recommend a loss amount based on the "most conservative $7-$20 million figure." (Id. at 2-3 n.1). Movant confirmed that agreement. (Sentencing Mem. of Mov't at 1-2, ECF No. 273). At sentencing, the Court assigned Movant a twenty-level increase in his offense level based on a loss amount of $7 to $20 million. (Sentencing Tr. at 10,

14

ECF No. 302).  Appellate counsel did not contest this issue.  See Stanley, 739 F.3d at 638-39.

In Ground Five, Movant argues that his sentencing offense level was erroneously increased from eighteen to thirty-nine (twenty-one levels) based on $44 million in alleged losses.  (Mot. to Vacate, Attach. at 30).  Movant  admits that he did not raise Ground Five on direct appeal and asserts ineffective assistance of appellate counsel as the reason he did not.  (Id. at 36).  In Ground Six, Movant argues that sentencing counsel provided ineffective assistance in failing to research the blue sheets, which resulted in his offense level being increased from eighteen to thirty-nine (twenty-one levels) based on $44 million in alleged losses.  (Id. at 36-37).  Movant further argues that appellate counsel was ineffective for failing to raise the issue on appeal.  (Id. at 37).  In response, Respondent points out that the offense-level loss amount was based on the parties' stipulation to the lower loss amount of $7 to $20 million.  (Resp't Resp. at 31).

Ground Five was procedurally defaulted and fails on its merits, and Ground Six fails because Movant does not show under the Strickland standard that sentencing or appellate counsel were ineffective on the matter.  Movant's offense level was increased twenty levels based on a loss of $7 to $20 million.  It was *not* increased twenty-one

15

levels based on a loss of over $40 million. Further, Movant shows nothing that sentencing counsel could or should have learned from the blue sheets, and presented to the court, which would have had any reasonable chance of changing the *conservative* calculation of a loss amount of $7 to $20 million. Absent any showing that sentencing counsel was ineffective, the Court perceives no claim that appellate was ineffective for failing to raise on direct appeal.

## C.   Ground Seven – Ineffective Assistance of Trial Counsel Before Movant Represented Himself

Movant argues that his counsel – before trial – was ineffective (1) for failing to hire a securities expert (who could have explained his lack of culpability and which would have led to mitigating evidence), (2) for failing to subpoena key witnesses for trial, and (3) for failing to request an evidentiary hearing on a federal agent's allegedly perjured grand-jury testimony. (Mot. to Vacate, Attach. at 38-39). Respondent argues that Movant shows no prejudice. (Resp't Resp. at 27-30).

Strickland applies. The movant has the burden of affirmatively proving prejudice, and a "conceivable effect" on the proceedings does not show prejudice. Wood v. Allen, 542 F.3d 1281, 1309 (11th Cir. 2008) (quoting Strickland, 466 U.S. at 693) (internal quotation marks omitted). A movant fails to demonstrate prejudice

16

when he himself fails to produce (or show any likelihood of producing) the very things that he asserts his counsel was ineffective for failing to produce. See Gilreath v. Head, 234 F.3d 547, 552 n.12 (11th Cir. 2000) (stating that if a petitioner complains of counsel's failure to obtain witnesses, the petition must "show that witnesses not presented at trial actually were available and willing to testify at time of trial").

Here, Movant makes no showing (1) on the availability and willingness of a security expert to explain Movant's lack of culpability or on the mitigating evidence that allegedly would have been discovered, (2) on the availability and willingness of key witnesses to testify or on what their testimony would have been, or (3) on the evidence that would have been brought out at an evidentiary hearing regarding grand jury proceedings. Ground Seven fails.

### D.   Ground Nine – Ineffective Assistance of Appellate Counsel and Related Grounds Two and Eight

#### 1.   Ground Nine (1) – Ineffective Assistance of Appellate Counsel on Electronic Equipment Malfunction

In Ground Nine (1), Movant argues that appellate counsel was ineffective for failing to raise on appeal the court's electronic equipment malfunction, which prevented him from presenting several hundred electronic documents in evidence reference list ERL13 (exhibits submitted with motion for new trial). (Mot. to Vacate,

17

Attach. at 41, 47; <u>see</u> <u>also</u> Motion for a New Trial, Exs. 1-52, ECF Nos. 240-2 through 240-126).[6]   In response, Respondent argues that Movant fails to show how an electronic equipment malfunction prevented him from introducing any of the exhibits. (Resp't Resp. at 32-33).

Movant's non-specific reference to all of the documents filed with his motion for a new trial – well over a thousand pages – is simply insufficient to meet Movant's burden of establishing under <u>Strickland</u> that there is a reasonable probability that the result at trial would have been any different if those documents had been introduced or show why, as Respondent argues, he could not otherwise introduce the documents obviously in his possession.

## 2.   <u>Ground Nine (2) – Ineffective Assistance of Appellate Counsel on Witness Tampering and Related Ground Eight</u>

After the close of the government's evidence, counsel for the government, Jamila Hall and Justin S. Anand, informed the Court that one of co-defendant Stanley's witnesses, Craig Cason, was under investigation. (Trial Tr. Vol. VIII at 1416-17, ECF No. 259).  The Court stated that Cason had a Fifth Amendment right not to testify and that, as he was a target of an investigation, he should be advised that he did not have

---

[6]It appears that Movant refers to exhibits three through fifty-two as the first two exhibits were allegedly new evidence.

18

to testify.  (Id. at 1419).  Anand, at the Court's direction, so warned Cason, and Cason

informed the Court that he understood his rights.  (Id. at 1426-27).  Movant called

Cason as a witness, and Cason pleaded the Fifth Amendment to every question posed

by Movant.  (Id. at 1430-32).

     In Ground Eight, Movant argues that Hall – whom he states was Stanley's

counsel – tampered with Cason, a material witness, by instructing him to plead the

Fifth Amendment.  (Mot. to Vacate, Attach. at 40-41).  Movant admits that he did not

raise Ground Eight on direct appeal and asserts ineffective assistance of appellate

counsel as the reason he did not.  (Id. at 41).  In Ground Nine (2), Movant argues that

appellate counsel was ineffective for failing to raise on appeal co-defendant's counsel's

tampering with Cason to plead the Fifth.  (Id. at 41).  These grounds fail.  Hall was a

government attorney, and another government attorney, Anand, *at the Court's*

*direction*, instructed Cason on his Fifth Amendment rights.  Following the Court's

direction to instruct a witness on his Fifth Amendment rights does not qualify as

witness tampering.

19

### 3.    Ground Nine (3) – Ineffective Assistance of Appellate Counsel on Perjury by a Key Witness and Related Ground Two

At trial, Donald Maddalon testified for the government, and Movant, who was representing himself, cross-examined Maddalon.  (See Trial Tr. Vol. V at 843, 987, ECF No. 256; Trial Tr. Vol. VI at 1026, 1146,  ECF No. 257).

In Ground Two, Movant argues that Maddalon committed perjury when he claimed that Movant and his co-defendants caused him to issue CSHC private shares as "publicly free trading[.]"  (Mot. to Vacate, Attach. at 30).  To show that Maddalon committed perjury, Movant argues:  (1) the SEC questioned Maddalon about trading activity; (2) Maddalon issued free trading shares to CSHC shareholders to misdirect the SEC investigation; (3) evidence showed that all CSHC private shares were to be issued as restricted; (4) Maddalon personally profited from selling shares at their peak prices; and (5) a press release shows that CSHC executives expected shareholders to receive "hard copy certificates."  (Id. at 30-31 (not citation provided)).  Movant admits he did not raise this claim on direct appeal and states ineffective assistance of counsel as his reason.  (Id. at 31).  In Ground Nine (3), Movant asserts that appellate counsel was ineffective for failing to raise the issue on appeal.[7]  (Id. at 42).

---

[7]In Ground Nine (3), Movant does not identify the key government witness to whom he refers, and the Court liberally construes Movant to refer to Don Maddalon,

20

Movant procedurally defaulted the underlying claim in Ground Two. In Ground Nine (3), Movant fails to show ineffective assistance of counsel to overcome his default, and Movant does not otherwise attempt to overcome his default.  There does not appear to be any reason that Movant could not have raised these issues during cross-examination. Further, none of Movant's listed arguments demonstrate the falsity of Maddalon's claim that Movant and his co-defendants caused him to issue CSHC private shares as "publicly free trading[.]"[8]  Trials are meant to "allow a full airing of differing accounts . . . . Impeachment allows a party to highlight inconsistencies within a witness's testimony and inconsistencies between a witness's testimony and that of other witnesses.  The task then falls to the jury to sort through all the testimony to determine the facts." Baker v. Welker, 438 F. App'x 852, 854 (11th Cir. 2011).  Had counsel raised Movant's current arguments on appeal, there is no reasonable probability that the appellate result would have been any different.

---

to whom he refers in his procedurally defaulted Ground Two.

   [8]Testimony that Movant caused Maddalon to issue CSHC shares is not contradicted or made false by (1) the SEC questioning Maddalon, (2) allegations regarding Maddalon's motive, (3) evidence that CSHC private shares were to be issued as restricted, (4) Maddalon's personal profit, or (5) whether or not CSHC executives expected shareholders to receive hard copy certificates.

21

4.      **Ground Nine (4) – Ineffective Assistance of Appellate Counsel on Alleged Threats**

On May 24, 2011, before the close of evidence, Movant absconded from trial. (Trial Tr. Vol. IX at 1596, ECF No. 260).  Trial continued, and on May 26, 2011, Movant was found guilty on all counts.  (Jury Verdict, ECF No. 208).  On May 28, 2011, Movant was arrested in Utah.  (Arrest Warrant, ECF No. 225).  The PSR shows that Movant initially stated, in January 2012, that he had been forced to leave this Court's jurisdiction because his family in Oklahoma was threatened and he wanted to ensure their safety but that later he apparently accepted responsibility for absconding. (PSR, Addendum and Attach.; see also Mot. to Reinstate Bond, ECF No. 229). Movant initially objected to the enhancement based on absconding but withdrew that objection.  (PSR ¶ 43 and Attach.).  At sentencing, Movant raised no objection to the enhancement when the Court reviewed his guidelines calculation.  (Sentencing Tr. at 11-12).

In Ground Nine (4), Movant argues that appellate counsel was ineffective for failing to raise on appeal the fact that Movant absconded because he and his family were threatened with murder if he returned to trial for his first day of defense.  (Mot.

22

to Vacate, Attach. at 42). In response, Respondent argues that Movant cites nothing to show that a murder threat motivated his decision to flee. (Resp't Resp. at 32-33).

Had appellate counsel raised the same cursory and unexplained claim that Movant now raises regarding an alleged threat there is no reasonable likelihood it would have succeeded on appeal. Movant provides no support, or even the suggestion of support, for his allegations that he and his family were threatened. Movant's family was in Oklahoma, and Movant provides no reason for his decision to flee to Utah. Movant does not attempt to explain why he did not inform the Court or the Federal Marshals about the alleged threat. Further, Movant withdrew his objection to the guidelines enhancement for absconding and provides no citation showing that he argued to this Court that he should receive a new trial because he absconded as a result of being threatened.[9]

---

[9]The Court has reviewed Movant's two *pro se* motions for a new trial in which he summarized his claims for a new trial (both motions filed after he was arrested and returned to this Court's jurisdiction), and therein Movant does not argue that he fled because his family was threatened. (Mot. for New Trial, ECF No. 240; Mot. for a New Trial, ECF No. 271).

23

**E.**     **Ground Ten – Court Error**
           **Ground Eleven – Restrictions on Stand-By Counsel**

As stated earlier, Movant argued on appeal "that his Sixth Amendment rights were violated both because he did not validly waive his right to counsel and because his standby counsel was not permitted to represent him after he ran." Stanley, 739 F.3d at 638. The Eleventh Circuit found that Movant had voluntarily waived his right to counsel. Id., at 649. The Court further found as follows –

> In the face of [Movant's] knowing and intelligent Sixth Amendment waiver, the district court did not violate [Movant's] right to counsel by refusing to allow standby counsel to represent the runaway [Movant] during the final days of the trial.
> . . . .
>
> We have not previously considered whether counsel must be appointed in a defendant's absence when the defendant has waived both the right to counsel and then the right to be present at trial. . . . In Clark v. Perez, 510 F.3d 382 (2d Cir. 2008), the Second Circuit dealt with a case involving a defendant who waived her right to counsel and thereafter voluntarily absented herself as an act of political protest. The Second Circuit found that, "[i]f she faced trial without advantages guaranteed by the Sixth Amendment, that was not by the trial judge's imposition, but by her own informed choice, which the trial judge was bound to respect." Id. at 397.
>
> Quite simply, [Movant] cannot show on this record that he rescinded his waiver of the right to counsel by absconding. With no other clues, his flight alone does not indicate unambiguously a desire to revoke his valid Sixth Amendment waiver and reinstate Manchel as counsel of record. [Movant] instead argues that the district court should have terminated his self-representation because he deliberately engaged in serious and

24

obstructionist misconduct.  When pro se criminal defendants have been removed from a courtroom because of disruptive behavior, standby counsels have been permitted to step in. . . . . As a result, [Movant] insists that the district court could have allowed Manchel to serve in [Movant's] absence. . . . But in this case we are not confronted with the question, and thus need not decide, whether the Sixth Amendment would have allowed the district court to permit standby counsel to represent an absconded [Movnat].  [Movant] cannot show that the Sixth Amendment required the court to permit standby counsel to take over.  And we have little doubt that if the district court had permitted Manchel to pick up the representation of [Movant] after his flight, we would be confronted with the argument that the district court had improvidently and without any record support overruled [Movant's] earlier unambiguous desire for self-representation.

Moreover, [Movant] ignores that his own decision to flee made it impossible for the trial to continue "in like manner and with like effect as if he were present." . . . With or without standby counsel, the trial could not continue as before once *pro se* [Movant] absconded.  Though [Movant] originally requested that Manchel serve as standby counsel, he also made clear that he intended to set his own course. [Movant] cannot now invoke a constitutional entitlement to the very counsel he knowingly and voluntarily rejected, solely because he bolted before the last day of trial.

Stanley, 739 F.3d at 649-50 (citations omitted).

Movant argues in Ground Ten that, in light of the murder threat against his family, his due process rights were violated when the Court ruled that he voluntarily waived his right to be present at trial, dismissed his stand-by counsel, and refused to

25

transcribe the jury instructions.[10]  (Mot. to Vacate, Attach. at 43).  Movant argues in Ground Eleven that his Sixth Amendment rights were violated by the Court's requirement that stand-by counsel "stand down" after Movant disappeared from trial. (Id. at 44).  Movant states that the threat against his family was omitted on appeal because of ineffective assistance of counsel.  (Id. at 43-44).

Movant's claim that his family was threatened is procedurally defaulted.  As discussed in Ground Nine (4), Movant fails to show any viable issue on the matter that appellate counsel was ineffective for failing to raise on appeal, and Movant does not otherwise overcome his default.  The remainder of this issue has already been decided by the Eleventh Circuit Court of Appeals, and Movant may not re-litigate it on collateral review.  See Rozier, 701 F.3d at 684.

## IV.    Certificate of Appealability (COA)

Under Rule 11 of the Rules Governing § 2254 Cases, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. . . . If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  The Court will

---

[10]The jury instructions were transcribed, and this assertion is not further addressed.  (See Jury Charge Tr., ECF No. 309).

26

issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  The applicant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Melton v. Sec'y, Fla. Dep't of Corr., 778 F.3d 1234, 1236 (11th Cir. 2015) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)) (internal quotation marks omitted), cert. denied, _ U.S. _, 136 S. Ct. 324 (2015).

> When the district court denies a habeas petition on procedural grounds .
> . . a COA should issue when the prisoner shows, at least, that jurists of
> reason would find it debatable whether the petition states a valid claim of
> the denial of a constitutional right and that jurists of reason would find it
> debatable whether the district court was correct in its procedural ruling.

Damren v. Florida, 776 F.3d 816, 820 (11th Cir. 2015) (quoting Slack, 529 U.S. at 484).

The undersigned recommends that a COA should be denied because the resolution of Movant's grounds is not debatable.  If the Court adopts this recommendation and denies a COA, Petitioner is advised that he "may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22." Rule 11(a), Rules Governing § 2254 Cases in the United States District Courts.

27

## V.   <u>Conclusion</u>

For the reasons stated above,

**IT IS RECOMMENDED** that Movant's motion [356] to vacate, set aside, or correct his federal sentence be **DENIED** and that a COA be **DENIED**.

The Clerk of Court is **DIRECTED** to withdraw the referral of this § 2255 motion to the undersigned Magistrate Judge.

**IT IS SO RECOMMENDED and DIRECTED** this 17th day of December, 2015.

JANET F. KING
UNITED STATES MAGISTRATE JUDGE

28